# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| WC South Congress Square, LLC, | § | Case No. 20-11107-tmd |
| | § | |
| Debtor. | § | |

## PROFFER OF SWORN TESTIMONY OF NATIN PAUL

I, Natin Paul, hereby submit the following as a written proffer of my testimony in connection with the April 12, 2021 hearing on confirmation of the plan of reorganization (the "*Plan*") currently proposed in this case by WC South Congress Square, LLC (the "*Debtor*").[1] If called to the stand to testify, I would testify under oath as follows:

## I.
## BACKGROUND

**A.  Personal Background**

1. My name is Natin (Nate) Paul, and I am the control person for manager of the Debtor, WC South Congress Square, LLC, and I have personal knowledge that the facts set forth herein are true and correct.

2. I am generally familiar with the Debtor's assets, liabilities, and operations. In addition, I have actively participated in the administration of this chapter 11 case in my capacity as the primary control person for the Debtor.

**B.  The Property and Financing**

3. The Debtor owns a 6.01 acre site located at the corner of South Congress Avenue and Riverside Drive. This site is improved with a 115-unit multi-family apartment community located at 500 South Congress Avenue in Austin, as well as two adjacent office buildings with a total of over 70,000 square feet of office space at 510 South Congress Avenue and 105 West Riverside Drive. (the "Property").

Page 1

4. The Debtor acquired the Property around December of 2017. The acquisition was funded by a combination of equity contributed by the Debtor and an acquisition loan with LoanCore Capital Credit REIT, LLC ("Loancore") in the principal amount of $33,600,000. At the time of the purchase, the Property was encumbered by a ground lease with Austin-CSC, Inc and John D. Byram, which was set to expire on July 31, 2020. At the expiration of the ground lease, the improvements on the Property (i.e. the multi-family apartment community and two office buildings) reverted to the Debtor.

5. In March of 2020, the COVID-19 pandemic wreaked havoc on the globe, and over the coming months, the capital markets experienced unprecedented disruption. During this same period, the Debtor was in negotiations with LoanCore about an extension or restructuring of its loan in light of the upcoming July 2020 ground lease expiration, which would allow the Debtor to receive the cash flows from the improvements, but would also require that the Debtor be responsible for the ongoing expense relates to the improvements.

6. On or around June of 2020, the Debtor was informed that LoanCore sold its loan position to a party who had approached LoanCore. In light of the impact of COVID-19 on the capital markets, the Debtor was informed that LoanCore entered into the note sale transaction because by selling a performing, creditworthy loan that was well-secured by the equity in the Property, the note sale afforded Loancore the opportunity to enhance their portfolio's performance which was otherwise experiencing the turmoil that most commercial mortgage companies were, as result of the COVID-19 crisis.

7. Based on the proof of claim filed by the Noteholder in this case, as of the Petition Date, the Debtor was indebted under the Loan in the amount of $34,070,235.88. Based on the appraisal of Ankura Consulting Group made as of February 28, 2021, the Property has an as-is value of $85,100,000. Accordingly, there is substantial equity value in the Property over and above any secured indebtedness owed to the Noteholder.

8. The Debtor is actively seeking to obtain replacement financing to satisfy the secured and unsecured creditors and exit this case.

Based on the activity and interest to date, I believe the Debtor will be able to successfully refinance prior to the October 6, 2021 date set forth in the Plan. Further, Debtor has interviewed professionals for marketing the property for sale, and will list the property for sale beginning on May 1, 2021, so that a sale process to achieve an October 6, 2021 payoff in full of all creditors will run alongside refinance efforts.

9. Based upon the financial projections filed in support of the proposed Plan, I believe that current and projected income is adequate to fund all proposed payments under the Plan.

10. The Debtor's Plan was proposed in good faith and with the legitimate and honest purpose to reorganize its affairs, to repay its creditors, and to preserve the residual equity value (which I believe is substantial) for the Debtor and its equity stakeholders.

## II.
## THE DEBTORS' PLAN

11. As previously noted, the Property is worth well in excess of the total amount of Noteholder's secured debt and any other secured debt encumbering the Property. As detailed in the Ankura appraisal, the appraiser concluded that the real property owned by the Debtor is valued at $85,100,000 on an as-is basis based on site value. Accordingly, there is significant residual equity value in the Property to preserve for the benefit of all the Debtors' stakeholders.

12. The Plan provides that the Debtor, among other things:

(a) Will pay unsecured creditors in full with interest;

(b) Will pay the Noteholder in full by one-year from the Petition Date or else be granted leave automatically to proceed to exercise remedies (including to pursue foreclosure).

## III.
## THE PLAN IS CONFIRMABLE

**A.  Good Faith**

13.  The Debtor filed for chapter 11 relief for the purpose of preventing a foreclosure on the Property, reorganizing its debts, and preserving its substantial equity value for the benefit of all stakeholders. Had a foreclosure sale occurred, I believe that unsecured creditors would likely have gone unpaid, and the equity investors' substantial equity stake in the Property would have been lost. In addition, the recent sale of the promissory note from the original lender to the Noteholder—combined with the lingering economic effects of the COVID0-19 pandemic—had negatively impacted the Debtor's ability to refinance its obligations or find a buyer in the face of a pending foreclosure. I therefore authorized the commencement of this chapter 11 case in order to give the Debtor the needed time to either refinance its obligations or to find a buyer. I believe the Debtor's actions were taken in good faith, and for the legitimate purpose of preserving the substantial value of the Property for the benefit of *all* stakeholders.

14.  For the same reason, I believe that the Plan was proposed in good faith. From the start of this case, the Debtor has proposed to repay all Allowed Claims in full—including the Allowed Noteholder Claim—and each successive amendment to the Plan has only improved and added further certainty to the nature of that proposed treatment. The Debtor's good faith is further demonstrated in its decision to simply *unimpair* all classes of claims under the Plan.

15.  Finally, in consultation with counsel for the Debtor on the requirements for confirmation of a plan, I believe that the Plan complies with the applicable provisions of the Bankruptcy Code.

**B.  Feasibility**

16.  Distributions under the Debtor's Plan will be funded by tenant revenues, with any necessary additional funding to be provided by me or an entity in which I am the beneficial owner as a form of equity contribution by the Debtor's manager.

### C. Identity of Management

17. As stated in Section 4.07 of the Plan, World Class Holdings VI, LLC, shall continue to serve as the sole member manager of the Debtor and the Property shall continue to be managed by World Class Property Company, LLC.

### D. Other Confirmation Elements

18. No governmental regulatory commission has jurisdiction over any rates charged by the Debtor.

19. Section 2.3 of the Plan provides for the timely payment of all fees due under 28 U.S.C. § 1930 either on the Effective Date or, if they become payable after confirmation of the Plan, in accordance with the requirements of 28 U.S.C. § 1930.

20. The Debtor has no retired employees to whom it provides ongoing medical or other retirement benefits.

21. The Debtor has no domestic support obligations.

22. The Debtor is not an individual as defined under the Bankruptcy Code. The Debtor is a limited liability company and is not a nonprofit entity

**[This space left intentionally blank]**

DECLARED under penalty of perjury this 10th day of April 2021.

_____
Natin Paul

*SIGNATURE PAGE*

5602963.1 FJR 23069.20