## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| § | Case No. 20-11107-tmd |
| WC SOUTH CONGRESS SQUARE, § | |
| LLC, § | Chapter 7 |
| § | |
| *Debtor.* § | |
| § | |

**NIA ATX LLC'S EMERGENCY MOTION FOR STAY PENDING APPEAL OF ORDER GRANTING TRUSTEE'S (EMERGENCY) MOTION FOR AUTHORITY TO SELL SUBSTANTIALLY ALL ASSETS OF THE ESTATE COMPRISED OF REAL PROPERTY PRIMARILY LOCATED AT 500 SOUTH CONGRESS AVENUE, AUSTIN, TEXAS 78704, AND RELATED INTERESTS, FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES AND TO APPROVE SALE AND GOOD FAITH DESIGNATION TO ALTERNATIVE PURCHASER**
*[Relates to ECF No. 391]*

TO THE HONORABLE TONY M. DAVIS, U.S. BANKRUPTCY JUDGE:

Movant NIA ATX LLC ("**NIA**") respectfully moves the Bankruptcy Court pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") for the entry of an order, on an emergency basis, staying the Bankruptcy Court's *Order Granting the Trustee's (Emergency) Motion for Authority to Sell Substantially All Assets of the Estate Comprised of Real Property Primarily Located at 500 South Congress Avenue, Austin, Texas 78704, and Related Interests, Free and Clear of All Liens, Claims, and Encumbrances and to Approve Sale and Good Faith Designation to Alternative Purchaser* [ECF No. 391] (the "**Substitute Sale Order**"), entered on September 15, 2022, granting the underlying *(Emergency) Motion for Authority to Sell Substantially All Assets of the Estate Comprised of Real Property Primarily Located at 500 South Congress Avenue, Austin, Texas 78704, and Related Interests, Free and Clear of All Liens, Claims, and Encumbrances and to Approve Sale and Good Faith Designation to Alternative Purchaser* [ECF No. 374] (the "**Substitute Sale Motion**"), filed by

Randolph Osherow, in his capacity as Chapter 7 trustee ("**Trustee**"), pending NIA's appeal ("**NIA's Appeal**") of the Substitute Sale Order. In support hereof, NIA demonstrates the following:

## I.     PRELIMINARY STATEMENT

1.      NIA's appeal arises from the Bankruptcy Court's oral rulings in hearings on September 12, 2022,[1] and September 15, 2022,[2] and its subsequent entry of the Substitute Sale Order, which improperly vacated the Final Sale Order [ECF No. 315] entered by the Bankruptcy Court on August 1, 2015, stripping NIA of its substantive contract and property rights as the Court-approved Back Up Bidder under the Final Sale Order.

2.      The Final Sale Order constitutes exactly that – a final judicial order, which can be set aside only by appeal or under Rule 60(b) of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 9024. A bankruptcy court's inherent powers to reconsider its own orders must be exercised within the parameters of Rule 60(b). The Bankruptcy Court's entry of the Substitute Sale Order, vacating the Final Sale Order, exceeded its inherent or equitable power and constitutes reversible error.

3.      In addition, the Bankruptcy Court's entry of the Substitute Sale Order materially altered the operative terms of NIA's negotiated, agreed-upon, and Court-approved sale contract with the chapter 7 Trustee to purchase the Estate's single asset for $95,000,000.00.

4.      Although the Final Sale Order set forth anticipated periods for the closing of the Sale to the Successful Bidder (Rising Tide) and Back Up Bidder (NIA), it also provided the Trustee with "sole discretion" to modify those closing deadlines. The Trustee exercised that discretion with

---

[1] Hearing on DIP Lender Expedited Motion (defined herein).
[2] Hearing on Substitute Sale Motion.

respect to Rising Tide, agreeing to extend Rising Tide's closing date from three (3) business days from the date of entry of the Final Sale Order to thirty-one (31) days.

5.      One day before Rising Tide's closing deadline, however, the Trustee informed NIA that Rising Tide had abandoned the purchase and that the Trustee intended to proceed to close with NIA as the Back Up Bidder. Because the Trustee had agreed to extend Rising Tide's closing deadline from three to thirty-one days, before the Successful Bidder ultimately backed out, NIA, as the Back Up Bidder, was now more than thirty days removed from the auction and the entry of the Final Sale Order. Consequently, the Trustee understood that NIA would reasonably require more than thirty (30) days to recapitalize $95,000,000.00 and successfully close NIA's purchase at its Back Up Bid Price.

6.      To that end, and pursuant to the explicit terms of the Final Sale Order, the Trustee exercised his "***sole discretion***" to extend NIA's closing deadline and to modify the terms of the APA originally submitted with NIA's bid to extend NIA's closing deadline to a date "***ninety (90) business days***" from the date of entry of the Final Sale Order ("**NIA's Closing Date**"). Further, the Trustee's agreement to extend NIA's Closing Date was memorialized, in writing, in the executed APA that the Bankruptcy Court approved in connection with the Final Sale Order.

7.      On September 9, 2022, the Trustee, via email, attempted unilaterally to modify his signed, written agreement to extend NIA's closing deadline from ninety *business* days to ninety *calendar* days, setting a new closing deadline of October 31, 2022. Although NIA opposed the Trustee's attempt to accelerate the closing deadline, NIA was nevertheless working diligently with the full financial backing of Transwestern Development Company, LLC ("**TDC**"), an industry-leading and well-respected developer of diversified real estate projects throughout the United States, toward closing its purchase by October 31, 2022.

8.     On September 12, 2022, the Bankruptcy Court held an expedited hearing to consider the Motion to Lift Stay filed on an "emergency" basis by Kennedy Lewis Investment Management, LLC and KL Horns Up, LLC (together, the "**DIP Lender**"), the Bankruptcy Court ruled from the bench, *sua sponte*, that NIA's closing deadline would be further compressed, from October 31, 2022 to September 30, 2022. Further, the Bankruptcy Court ruled from the bench, *sua sponte*, that NIA would be required to confirm to the Trustee by 5pm the following day that NIA would close the purchase by September 30, 2022, at its Back Up Purchase Price of $95,000,000.00. If NIA failed to meet this 5pm deadline, then the Bankruptcy Court ordered the Trustee to finalize terms of sale with another Qualified Bidder.

9.     On September 15, 2022, the Bankruptcy Court memorialized these oral rulings through entry of the Substitute Sale Order, which materially altered terms of both the Final Sale Order and NIA's APA to the detriment of NIA and other stakeholders, including all equity holders of the Debtor. The Substitute Sale Order explicitly denied NIA the opportunity to close its Court-approved purchase on any date and at any price. The Substitute Sale Order instead directed the Trustee to sell the Estate property based on newly submitted "highest and best" bids solicited post-auction from other Qualified Bidders. The Substitute Sale Order also approved a Successful Bid of $65,000,000.00, at least $30,000,000.00 lower than NIA's Back Up Purchase Price, and inconsistent with the best interests of the Estate or its stakeholders.

10.     Presumably, the Bankruptcy Court moved swiftly due to a concern that if the DIP Lender foreclosed on the Property, any value for creditors and administrative claimants would be lost. But there is no dispute that the DIP Lender was adequately protected. In fact, the Trustee attested at Paragraph 15 in his filed *Declaration in Support of Trustee's Objection to the DIP Lender's Motion to Lift Stay* [ECF No. 366] that the Estate would consent to pay appropriate

adequate protection payments to the DIP Lender rather than lifting the stay and allowing foreclosure. Further, the DIP Lender continues to accrue default interest on a note that is vastly over-secured by the substantial equity cushion in the Estate property.

11.    On these facts, there can be no doubt that the Bankruptcy Court abused its discretion to frustrate NIA's contract rights and expectations as the Court-approved Back Up Bidder under the Final Sale Order and offend the public interest in the finality of the sale process. The Substitute Sale Order, and the circumstances surrounding its entry, taint the intrinsic fairness of the sale itself Further, the findings of fact and conclusions of law reflected in the Substitute Sale Order mischaracterize NIA's obligations under the Final Sale Order, which approved its APA.

12.    Because the Substitute Sale Order contemplates that Related Texas, LLC ("**Related**") will close its Purchase of the Property by September 30, 2022, NIA seeks the issuance of an immediate stay pending its appeal. In the absence of an immediate stay, the property will be sold to Related or, alternatively, to the DIP Lender, and NIA will suffer irreparable injury. In addition, and as set forth in detail herein, NIA will demonstrate a likelihood of success on the merits of its appeal, the granting of the stay will not substantially harm other parties in interest, and the granting of the stay will serve the public interest.

## II.    JURISDICTION

13.    The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2). The Bankruptcy Court is authorized to grant the relief requested herein pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure.

14.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### III.    BACKGROUND FACTS

15.    On October 6, 2020, Debtor WC South Congress Square, LLC ("**Debtor**") commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Bankruptcy Case**"). On May 19, 2022, the Bankruptcy Case was converted to a case under chapter 7 of the Bankruptcy Code, and Randolph Osherow (the "**Trustee**") was appointed as chapter 7 trustee. The Bankruptcy Case was filed as a single asset real estate case, and the Debtor's assets consist primarily of the real property and improvements located at 500 South Congress Avenue, 510 South Congress Avenue, and 105 West Riverside Drive, Austin, Texas 78704 (the "**Property**").

16.    On June 3, 2022, the Trustee filed his *Motion*: *(I) for Authority to Sell Substantially all Assets of the Estate Comprised of Real Property Primarily Located at 500 South Congress Avenue, Austin, Texas 78704, and Related Interests, Free and Clear of All Liens, Claims, and Encumbrances; (II) for Approval of Sale, Notice, and Executory Contract Procedures; and (III) to Set a Final Hearing to Conduct Auction and to Approve Sale and Good Faith Designation to Prevailing Purchaser* [ECF No. 245] (the "**Sale Motion**"). The Trustee incorporated his preferred form of sale contract as Exhibit B to the Sale Motion [ECF No. 245-2] (the "**Form APA**").

17.    On June 13, 2022, the Bankruptcy Court held an initial hearing to consider the Sale Motion, and on June 14, 2022, the Bankruptcy Court entered its *Order (I) Authorizing Sale of Substantially all Assets of the Estate Comprised of Real Property Located at 500 South Congress Avenue, Austin, Texas 78704, and Related Interests, Free and Clear of All Liens, Claims, and Encumbrances; (II) Approving Procedures for Notice and the Conducting of the Sale Process; and (III) Scheduling Final Hearing to Conduct Auction and to Approve Sale and Good Faith Designation to Prevailing Purchaser* [ECF No. 262] (the "**Sale Procedures Order**").

18.     The Sale Procedures Order approved procedures to govern the marketing and sale of the Property (the "**Sale Procedures**"), and to determine the Qualified Bidder who successfully made the highest and best bid for the Property ("**Successful Bidder**") as well as the Qualified Bidder making the next best and highest offer for the Property (the "**Back Up Bidder**"). The Sale Procedures Order required bidders to submit Qualified Bids to the Trustee using the Trustee's Form APA, and it set July 27, 2022 for both "the Auction and the Final Sale Hearing to consider final approval of the Sale of the Property (and any related assets) to the Successful Bidder or Back Up Bidder, as Purchaser, and the transactions contemplated thereby." (Sale Procedures Order, p. 4.)

19.     To be a Qualified Bid, the Sale Procedures Order required, *inter alia*, each interested bidder to post with the Trustee a $1,000,000.00 earnest money deposit and to submit bids on the Trustee's Form APA. (*See id*.) In addition, a Qualified Bid was required "include the bidder's agreement, if approved as Successful Bidder or Back Up Bidder…to close its approved bid by no later than 5:00 p.m. Central time on the first date that is three (3) business days following entry of the Final Sale Order." (*Id*., p. 14.)

20.     The Form APA accompanying all Qualified Bids also contemplated a 3-business-day closing as follows:

> **5.1 Closing Date**.
>
> The **Closing** of this Agreement will take place not later than three (3) business days following entry of the Sale Order by the Bankruptcy Court authorizing the Trustee to enter into this Agreement and proceed with Closing (the **Closing Date),** or at such other time as ordered by the Bankruptcy Court.

(Form APA [ECF No. 245-1], § 5.1.)

21. On July 27, 2022, the Trustee conducted the Auction with Bankruptcy Court oversight, followed by the Final Sale Hearing before the Bankruptcy Court.

22. On August 1, 2022, the Bankruptcy Court entered its *Order Granting Trustee's Motion for Authority to Sell Substantially all Assets of the Estate Comprised of Real Property Primarily Located at 500 South Congress Avenue, Austin, Texas 78704, and Related Interests, Including Executory Contracts, Free and Clear of All Liens, Claims, and Encumbrances, and Providing Relief Pursuant to __11 U.S.C. § 363(b), (f), and (m)__* [Docket No. 315] (the "**Final Sale Order**").

23. The Final Sale Order confirms that the Trustee, "*in his reasonable business judgment*" selected: (1) Rising Tide Investments, LLC ("**Rising Tide**"), an insider entity controlled by the Debtor's owner, as the Successful Bidder with a purchase price of $95,100,000.00; and (2) NIA as the Back Up Bidder with its bid of $95,000,000.00 ("**Back Up Bid Price**"). (Final Sale Order, p. 5 (emphasis added), 7-8.) The Final Sale Order approved the Trustee's selection of Rising Tide as the Successful Bidder and NIA as the Back Up Bidder. (*Id.* p. 5, ¶ 10.)

24. The Final Sale Order defined "Purchaser" as either the Successful Bidder or Back Up Bidder, and defined the "Purchase Price," as the foregoing highest bid amount by the Successful Bidder or Back Up Bidder, as applicable. (*Id.*) The Final Sale Order further established:

> As demonstrated by (a) testimony and other evidence proffered or adduced at the Sale Hearing and (b) the representations of counsel made on the record at the Sale Hearing, the Trustee and his professionals have received no other higher or better offers. The Sale process undertaken by the Trustee and his professionals with respect to the Property has been adequate and appropriate under the particular circumstances, and the Purchase Price represents the highest and best proposal received by the Trustee, thereby maximizing the value of the Property for the Debtor's Estate. Furthermore, the Purchase Price is fair and adequate and constitutes

reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable laws of the United States or any of its jurisdictions or subdivision.

The Purchase Price was negotiated by the Trustee and the Purchaser without collusion, in good faith, and at arm's length. Neither the Trustee nor the Purchaser has engaged in any conduct that would cause or permit the Purchase Price to be avoided under section 363(n) of the Bankruptcy Code. Neither Back Up Bidder, nor any of its affiliates or representatives, is an "insider" of the Debtor as such term is defined in section 101(31) of the Bankruptcy Code.

The Purchaser, to the extent it timely and fully closes and performs the Sale and APA, is hereby deemed to be a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, shall be entitled to all of the protections afforded thereby.

(*Id*. pp. 5-6, ¶¶ 11-13.)

25.     The Final Sale Order approved the "purchase and Sale of the Property for the Purchase Price and as otherwise set forth in the [Form] APA submitted by the Purchaser with its Qualified Bid *and as may be modified by the Trustee's consent*." (*Id.,* p. 7, ¶ 3 (emphasis added).)

26.     Although both the Sale Procedures Order and the Form APA contemplated that the Successful Bidder would close the Sale within three (3) business days from the date of entry of the Final Sale Order, Rising Tide requested, and the Trustee agreed, to extend Rising Tide's deadline to close the Sale to August 31, 2022, or thirty (31) days from entry of the Final Sale Order. (*See Declaration of Randolph Osherow, Trustee, in Support of Trustee's Objection to DIP Lender's Lift Stay Motion* [ECF No. 366] ("**Trustee Decl. I**"), p. 3, ¶ 8.)

27.     Thus, with respect to Rising Tide, the Trustee freely exercised the discretion granted to him to modify Rising Tide's APA and extend Rising Tide's closing deadline from three (3) business days to thirty-one (31) days from the date of entry of the Final Sale Order.

28.     If, however, the Successful Bidder failed to close the Sale by August 31, 2022, then the Final Sale Order directed the Trustee to provide notice to NIA and "proceed to close with Back Up Bidder as Purchaser at the Back Up Bidder's Purchase Price…." (Final Sale Order, p. 8, ¶ 7.)

29.     In advance of Rising Tide's scheduled closing deadline, Rising Tide informed the Trustee that it would not close its $95.1 million purchase of the Property. (Trustee Decl. I, p. 4. ¶10.)

30.     On August 30, 2022, one day before the closing deadline that the Trustee and Rising Tide had negotiated and  memorialized in writing, the Trustee filed and served his *Notice of Non-Closing of Sale and of Request to Back Up Bidder to Close Back Up Bid for Real Property Located at 500 South Congress Avenue, Austin, Texas 78704, and Related Interests, Free and Clear of All Liens, Claims, and Encumbrances* [ECF No. 351] ("**Notice to Back Up Bidder**").

31.     The Final Sale Order expressly provides that NIA, as the Back Up Bidder would close the sale and Purchase of the Property "within thirty (30) days after the Trustee's notice to the Back Up Bidder of his request to close the Sale with Back Up Bidder, ***or such other subsequent closing date and deadline that the Trustee in his sole discretion agrees to in writing***." (Final Sale Order (emphasis added).)

32.     As a result of the Trustee's agreement to extend Rising Tide's closing deadline from three to thirty-one days, NIA, as the Back Up Bidder, was now more than thirty days removed from the auction and the entry of the Final Sale Order. Consequently, NIA would reasonably require more than thirty (30) days to recapitalize ***$95,000,000.00*** and successfully close NIA's purchase at its Back Up Bid Price. The Trustee understood this reality, and the Trustee agreed to extend NIA's closing deadline.

33.     On September 2, 2022, in reliance upon the terms of the Final Sale Order granting the Trustee "sole discretion" to extend NIA's closing deadline and to modify the terms of the APA originally submitted with NIA's Qualified Bid, NIA and the Trustee negotiated and executed a written APA ("**NIA APA**"), which extended NIA's closing deadline until ***ninety (90) business days*** following the entry of the Final Sale Order. (*See* NIA APA, 5.1.)

34.     Although the Trustee and NIA dispute whether NIA's 90-day closing deadline should have been calculated in business days or calendar days, the Trustee and his counsel have represented in open court and in declarations filed by the Trustee that NIA's closing deadline would not expire until October 31, 2022, at the earliest.

35.     On September 14, 2022, the Trustee filed his Declaration in Support of Trustee's Motion to Sell to Alternative Purchaser [ECF No. 380] ("**Trustee Decl. II**"). In it, the Trustee attested:

> At the hearing conducted on September 12, 2022 to consider the DIP Lender Motion, NIA ATX asserted that following entry of the Final Sale Order, I had provided to NIA ATX an extension of the deadline to close the Sale beyond September 30, 2022, however, I did at any time intend to agree to extend the closing deadline past October 31, 2022. At the Hearing, the Court ruled that the deadline to close the Sale with any party other than the DIP Lend-er does not extend past September 30, 2022 in any event.

(Trustee Decl. II, ¶ 19.)

36.     NIA has been working diligently with TDC toward closing NIA's purchase of the Property by the date.

37.     On September 6, 2022, the DIP Lender Motion was filed, requesting that the stay be lifted so that the DIP Lender could foreclose on the Property as early as October 4, 2022. There is no dispute that the DIP Lender is vastly over-secured by the substantial equity cushion in the Property and continues to accrue default interest at 18%. The DIP Lender Motion states incorrectly

that NIA "has until September 29, 2022 to close" on its purchase of the Property, and "[t]he DIP Lender has no knowledge as to whether [NIA] intends to close on the purchase of the [] Property." (DIP Lender Motion, p. 7, ¶ 19.) In fact, DIP Lenders' counsel knew full well that NIA's closing deadline had been extended beyond September 29, 2022.

38.     On September 2, 2022, the Trustee's counsel, Jay Ong, engaged in an email with exchange with Lynn Butler, local counsel for the DIP Lender. In response to Mr. Butler's inquiry into "new develpments [sic]", Mr. Ong responded:

> The back up bid appears to be proceeding ***but will take a little more than 60 days since this is a non [World Class] buyer under a title company closing.*** They have funded their [$1mm] deposit and signed their $95mm APA agreement.

([ECF No. 363-1], p. 1 (emphasis added).)

39.     On September 12, 2022, at an expedited hearing before the Bankruptcy Court to consider DIP Lender Motion, the Bankruptcy Court ruled from the bench, *sua sponte*, that NIA's closing deadline would be further compressed, from October 31, 2022 to September 30, 2022. Further, the Bankruptcy Court ruled from the bench, *sua sponte*, that NIA would be required to confirm to the Trustee by 5pm the following day that NIA would close the purchase by September 30, 2022, at its Back Up Purchase Price of $95,000,000.00. If NIA failed to meet this 5pm deadline, then the Bankruptcy Court ordered the Trustee to finalize terms of sale with another Qualified Bidder.

40.     On September 13, 2022, the Trustee filed his Substitute Sale Order, and the Bankruptcy Court set an emergency hearing on the Substitute Sale Motion for September 15, 2022.

41.     Following the hearing on September 15, 2022, the Bankruptcy Court memorialized its oral rulings through entry of the Substitute Sale Order, which denied NIA the opportunity to

close its Court-approved purchase of the Property on any date and at any price. The Substitute Sale Order instead directed the Trustee to sell the Property based on newly submitted "highest and best" bids solicited post-auction from other Qualified Bidders. The Substitute Sale Order also approved a Successful Bid of $65,000,000.00, at least $30,000,000.00 lower than NIA's Back Up Purchase Price.

## IV.    ARGUMENT

42.    A party appealing an order of the bankruptcy court may move the court to issue a stay of its order or otherwise suspend proceedings in the case during the pendency of the appeal to protect the rights of all parties in interest. *See* FED. R. BANKR. P. 8007(a) and (e).

43.    A stay pending appeal is an exercise of judicial discretion, the issuance of which is dependent on the circumstances of the particular case. *See Nken v. Holder*, 556 U.S. 418, 433 (2009). A discretionary stay pending appeal of a bankruptcy proceeding should be granted if the movant demonstrates: (1) "[a] likelihood of success on the merits;" (2) "[some] irreparable injury if the stay is not granted;" (3) "the granting of the stay would [not] substantially harm the other parties;" and (4) "the granting of the stay would serve the public interest." *In re First S. Sav. Ass'n,* 820 F.2d 700, 704 (5th Cir. 1987) (citing *Ruiz v. Estelle,* 666 F.2d 854, 856 (5th Cir. 1982 (*Ruiz II"*)). While each of the four factors must ordinarily be met, "the movant need not always show a 'probability' of success on the merits when a serious legal question is involved and show that the balance of the equities [i.e., the consideration of the other three factors] weighs heavily in favor of granting the stay." *Arnold v. Gatlock,* 278 F.3d 426, 438–39 (5th Cir. 2001) (quoting *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir. 1981) (*"Ruiz I"*)). In this case, the scales tip decisively in favor of a stay.

- **Success on the Merits**

44.     As to the first factor, in *Ruiz I*, the Fifth Circuit held that "on motions for stay pending appeal the movant need not always show a 'probability' of success on the merits" but "need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Id.* at 565; *see also In re Northwest Mo. Holdings, Inc.*, 2015 WL 3638000, at *2 (D. Del. June 11, 2015) (finding that a "[l]ikelihood of success on the merits means that the movant has a substantial case, or a strong case on appeal"); *Realvirt LLC v. Lee*, 220 F. Supp. 3d 704, 705–06 (E.D. Va. 2016) ("the first factor 'does not require the trial court to change its mind or conclude that its determination on the merits was erroneous.'").

45.     The Bankruptcy Court's entry of Substitute Sale Order improperly vacated the Final Sale Order entered by the Bankruptcy Court on August 1, 2015, depriving NIA of its substantive contract and property rights as the Court-approved Back Up Bidder under the Final Sale Order.

46.     The Final Sale Order constitutes exactly that – a final judicial order, which can be set aside only by appeal or under Rule 60(b) of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 9024. A bankruptcy court's inherent powers to reconsider its own orders must be exercised within the parameters of Rule 60(b). See, e.g., *In re Met–L–Wood Corp.,* 861 F.2d 1012, 1018 (7th Cir. 1988), *cert. denied, Gekas v. Pipin,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989) (holding that "the old inherent power to reconsider bankruptcy orders has been merged into ... rule [60(b) ]").

47.     The Bankruptcy Court's entry of the Substitute Sale Order, vacating the Final Sale Order, exceeded its inherent or equitable power and constitutes reversible error on this basis alone.

48.     Further, the crux of NIA's appeal challenges the intrinsic fairness of the sale process, which imparts NIA with standing to assert its appeal and seek a stay of the Substitute Sale Order pending that appeal. *See, e.g., Dick's Clothing & Sporting Goods, Inc. v. Phar-Mor, Inc.*, 212 B.R. 283, 289 (N.D. Ohio 1997) (holding that "[w]hile unsuccessful bidders generally are not considered to be aggrieved persons or to be within the zone of interests of the Bankruptcy Code for purposes of standing, courts have recognized an exception in cases where the unsuccessful bidder challenges the underlying fairness of the sale."); *In re Colony Hill Associates,* 111 F.3d at 274 (2d Cir. 1997) (unsuccessful bidder had standing to challenge "'intrinsic fairness'" of sale and good faith status of purchaser); *In re Harwald Co.,* 497 F.2d 443, 444 (7th Cir. 1974) (noting that unsuccessful bidders may challenge sale "on equitable grounds related to the intrinsic structure of the sale").

49.     The Bankruptcy Court entered the Final Sale Order on August 1, 2022. No party in interest filed an objection, appeal, or other timely challenge to the Final Sale Order, and the Final Sale Order was not vacated under Rule 60 of the Federal Rules or any applicable Bankruptcy Rule.

50.     The Final Sale Order approved NIA as the Backup Bidder, and the NIA APA executed pursuant to that Final Sale Order provided NIA until October 31, 2022 (at the earliest) to close its purchase of the Property. *See, e.g., Corporate Assets, Inc. v. Paloian,* 368 F.3d 761, 768 (7th Cir. 2004) (noting that "[o]nce a court has confirmed the sale of the debtor's assets to the auction's victor, ... only a narrow range of circumstances will support a court's decision to vacate the sale order and reopen the bidding"); *In re Food Barn Stores, Inc.,* 107 F.3d 558, 565 (8th Cir. 1997) ("[a]t some point, such as when the court actually enters an order approving the sale, expectations become sufficiently crystallized so as to render it improper to frustrate anticipated

results except in the limited circumstances where there is a grossly inadequate price or fraud in the conduct of the proceedings.")

51.      NIA's appeal also challenges the good faith of the DIP Lender and Related, the only Qualified Bidders eligible to purchase the Property under the Substitute Sale Order. Specifically, both the DIP Lender and Related have propagated unfounded allegations as to NIA's willingness and ability to close at its Back Up Bid Purchase Price. This, in an attempt to gain an unfair advantage in the sale process and acquire the Property with Qualified Bids substantially lower than NIA's Court-approved Back Up Bid Purchase Price.

52.      NIA is also challenging the factual findings and conclusions of law of the Bankruptcy Court as recited in the Substitute Sale Order, which mischaracterize NIA's obligations under the Final Sale Order.

53.      Here, NIA has both demonstrated that a "serious legal question is involved" and shown that the balance of equities weighs in its favor, as required to trigger the "substantial case" standard. Under either standard—"substantial case" or "probability of success"—NIA satisfies this first factor. For all of these reasons, NIA has compelling strong grounds to overturn the Substitute Sale Order.

- **Irreparable Harm If a Stay Is Not Granted**

54.      In addressing the element of irreparable harm, "the Fifth Circuit applies the finality rule, meaning that an appeal of a bankruptcy court's order authorizing sale is usually moot pursuant to section 363(m) once the sale has occurred." *In re Texas Equip. Co., Inc.*, 283 B.R. 222, 228 (Bankr. N.D. Tex. 2002) (citing *Ginther v. The Ginther Trusts (In the Matter of The Ginther Trusts)*, 238 F.3d 686, 688-89 (5th Cir. 2001)). "[A] failure to obtain a stay is fatal to a challenge of a bankruptcy court's authorization of the sale of property." *Ginther* at 689. Therefore, if NIA is

denied a stay, a sale of the Property would be irreversible. 11 U.S.C. § 363(m). NIA would be left without effective remedies. *See Ginther,* 238 F.3d at 689.

55.     Although NIA does not concede that its appeal would be rendered statutorily moot by imposition of the Substitute Sale Order, the mere risk that the appeal can be mooted supports a finding of irreparable harm to NIA.

- **Substantial Harm to Other Parties**

56.     The third element concerns substantial harm to other parties. In light of the substantial equity cushion in the Property, it is impossible to envision how the DIP Lender or the stakeholders of the Estate would be substantially harmed. Moreover, NIA has proposed to purchase the DIP Lender's Note, so no harm whatsoever would accrue to the DIP Lender. In fact, if the Substitute Sale Order is overruled, and NIA consummates its purchase of the Property at the Back Up Bid Price, then such closing would yield a significant return for the Estate and its stakeholders.

57.     While the denial of a stay would irreparably harm NIA, granting a stay would not substantially harm any other party to this proceeding, and will ultimately benefit creditors.

58.     Accordingly, because the other parties will not suffer substantial harm, if any, this factor also weighs in favor of granting a stay pending appeal.

- **Public Interest Considerations**

59.     Courts consider whether the public interest will be served by granting a stay pending appeal, and public policy concerns stand at the forefront of NIA's appeal. "This factor calls for the court . . . to consider and balance the goal of efficient case administration and the right to a meaningful review on appeal." *In re Taub*, Case No. 08-44210, 2010 WL 3911360, at *9 (Bankr. E.D.N.Y. Oct. 1, 2010). Here, the public interest lies in granting a stay because the stay will substantially reduce the potential risk of the appeal being rendered statutorily or equitably

moot and allow an appellate court to review and adjudicate the merits of the issues that not only impact NIA but may also have a broader effect on public confidence in judicial sales. *See, e.g., In re Gil–Bern Industries,* 526 F.2d 627, 628 (1st Cir. 1975) (noting that "it is important that the bidder receive what he had reason to expect, and that nothing impair public confidence in the regularity of judicial sales"). Courts must act consistently with the rules governing the sale "and in compliance with the bidders' reasonable expectations." *Food Barn,* 107 F.3d at 565.

60.     Thus, the public interest is better served when there remains the opportunity for a meaningful appellate review of these issues that have widespread implications for all participants in judicial sales, like NIA.

- **NIA Should Not Be Required to Post a Bond**

61.     Although Bankruptcy Rule 8007 allows the Bankruptcy Court to condition a stay pending appeal on the filing of a bond, NIA should not be required to post a bond as a condition of granting its requested stay. The purpose of imposing a bond is "to protect the adverse party from potential losses resulting from the stay." *In re United Merchs. & Mfrs., Inc.*, 138 B.R. 426, 430 (D. Del. 1992).

62.     Generally, a bond is only necessary where the stay is "likely to cause harm by diminishing the value of an estate or 'endangering [the non-moving parties'] interest in the ultimate recovery.'" *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 368 (S.D.N.Y. 2007).

63.     No bond is necessary here because, as discussed above, no substantial harm will come to other parties as a result of the stay. *See In re Finova Group, Inc.*, 2007 WL 3238764, at *2 (D. Del. Oct. 3, 2007) (refusing to require bond where "no substantial harm will come to the debtors as a result of this stay"). A stay seeks to maintain the status quo and preserve funds or the rights of the parties until after an appeal is decided. Here, a stay will preserve the rights of the

parties until after the appeal is decided and no real harm will be suffered by the parties by virtue of a stay. *See In re Sphere Holding Corp.*, 162 B.R. 639, 644-45 (E.D.N.Y. 1994) (bond not required as a condition to enjoin creditors from collection pending appeal when there was no evidence that the creditor's collateral was diminishing in value and little damage would occur). Therefore, a bond is unnecessary.

64.     If the Bankruptcy Court does require NIA to post a bond, the amount of the bond should be nominal in light of the conditions proposed by NIA for granting the stay, which eliminate, any potential losses suffered by DIP Lender and other parties.

WHEREFORE, for all of the foregoing reasons, NIA ATX LLC has satisfied the four factors for granting a stay pending appeal NIA respectfully requests that this Bankruptcy Court enter an order staying the Substitute Sale Order pending the appeal, and granting such other and further relief as is just and proper.

Dated: September 23, 2022.                    Respectfully submitted,

**DUBOIS, BRYANT & CAMPBELL, LLP**

By :*/s/ Seth E. Meisel*
        Seth E. Meisel
        Texas State Bar No. 24037089
        303 Colorado Street, Suite 2300
        Austin, Texas 78701
        (512) 381-8012
        (512) 457-8008 (Fax)
        smeisel@dbcllp.com

And

        Morris E. "Trey" White III
        Texas State Bar No. 24003162
        Villa & White, LLP
        1100 N.W. Loop 410, Suite 802
        San Antonio, Texas 78213
        (210) 225-4500
        (210) 212-4649 (Fax)

treywhite@villawhite.com

**ATTORNEYS FOR NIA ATX, LLC**

**<u>CERTIFICATE OF SERVICE</u>**

      The undersigned certifies that on the 23rd day of September, 2022, a true and correct copy of the foregoing document was served via the Court's CM/ECF notification system or by electronic mail and/or by regular first class mail, postage prepaid on the parties listed below.

Kell C. Mercer
Kell C. Mercer, P.C.
901 S MoPac Expy, Bldg 1, Suite 300
Austin, TX 78746
512-627-3512
512-597-0767 (fax)
kell.mercer@mercer-law-pc.com

Lynn Hamilton Butler
Husch Blackwell LLP
111 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 479-9758
(512) 226-7318 (fax)
lynn.butler@huschblackwell.com

Brad M. Kahn
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
212-872-1000
212-872-1002 (fax)
bkahn@akingump.com

Lacy M. Lawrence
Akin Gump Strauss Hauer & Feld LLP
2300 N. Field Street
Suite 1800
Dallas, TX 75201
(214) 969-2800
(214) 969-4343 (fax)
llawrence@akingump.com

Richard G. Grant
Culhane Meadows, PLLC
13101 Preston Road, Suite 110-1510

Dallas, TX 75240
214-210-2929
rgrant@cm.law

Jay Ong
Munsch Hardt Kopf & Harr, P.C.
1717 West 6th Street
Suite 250
Austin, TX 78703
(512) 391-6100
(512) 391-6149 (fax)
jong@munsch.com

Randolph N Osherow
342 W Woodlawn, Suite 100
San Antonio, TX 78212
(210) 738-3001
rosherow@hotmail.com

Stephen A. Roberts
Stephen A Roberts, P.C.
1400 Marshall Ln
Austin, TX 78703
512-431-7337
sroberts@srobertslawfirm.com

T. Josh Judd
Andrews Myers, P.C.
1885 Saint James Place, 15th Floor
Houston, TX 77056
713-850-4200
832-786-4877 (fax)
jjudd@andrewsmyers.com

Kimberly A. Walsh
Texas Attorney General
Bankruptcy & Collections Division
P. O Box 12548
Austin, TX 78711-2548
512-475-4863
512-482-8341 (fax)
bk-kwalsh@oag.texas.gov

Jason A. Starks
Travis County
c/o Jason A. Starks

P.O. Box 1748
Austin, TX 78767
512-854-9092
512-854-4808 (fax)
bkecf@traviscountytx.gov

United States Trustee - AU12
United States Trustee
903 San Jacinto Blvd, Suite 230
Austin, TX 78701
(512) 916-5330
ustpregion07.au.ecf@usdoj.gov

John C. Roy
DOJ-Ust
903 San Jacinto Blvd., Room 230
Austin, TX 78701
512-916-5328
casey.roy@usdoj.gov

WC South Congress Square LLC
814 Lavaca St.
Austin, TX 78701

Stephen A. Roberts
Stephen A Roberts, P.C.
1400 Marshall Ln
Austin, TX 78703
512-431-7337
sroberts@srobertslawfirm.com

Mark H. Ralston
13155 Noel Road
Suite 700
Dallas, TX 75240
214-499-5544
214-499-5501 (fax)
mralston@fjrpllc.com

/s/ Seth E. Meisel
Seth E. Meisel