IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| In re: § <br> § <br> WC SOUTH CONGRESS SQUARE, LLC, § <br> § <br> Debtor. § <br> § | Case No. 20-11107-tmd <br><br> Chapter 7 |

**DECLARATION OF RANDOLPH OSHEROW, TRUSTEE IN OPPOSITION TO NIA ATX LLC'S EMERGENCY MOTION FOR STAY PENDING APPEAL OF ORDER GRANTING TRUSTEE'S (EMERGENCY) MOTION FOR AUTHORITY TO SELL SUBSTANTIALLY ALL ASSETS OF THE ESTATE COMPRISED OF REAL PROPERTY PRIMARILY LOCATED AT 500 SOUTH CONGRESS AVENUE, AUSTIN, TEXAS 78704, AND RELATED INTERESTS, FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES AND TO APPROVE SALE AND GOOD FAITH DESIGNATION TO ALTERNATIVE PURCHASER**

I, Randolph N. Osherow, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true to the best of my actual, personal knowledge, information, and belief:

**A.     General Background**

1.     My name is Randolph Osherow. I am over the age of 18, have never been charged nor convicted of any felony or crime of moral turpitude, and am competent to execute this Declaration. I am the duly appointed Chapter 7 Trustee ("Trustee") for Debtor WC South Congress Square, LLC ("Debtor") and its bankruptcy estate ("Estate") under the above-captioned bankruptcy case (this "Bankruptcy Case"). In my capacity as Trustee, I submit this declaration in opposition to *NIA ATX LLC's Emergency Motion for Stay Pending Appeal*[1] *of Order*[2] *Granting Trustee's (Emergency) Motion for Authority to Sell Substantially All Assets of the Estate Comprised of Real Property Primarily Located at 500 South Congress Avenue, Austin, Texas*

---

[1] Docket No. 406 (the "NIA ATX Motion").

[2] Docket No. 391 (the "Alternative Sale Order").

Page 1

*78704, and Related Interests, Free and Clear of All Liens, Claims, and Encumbrances and to Approve Sale and Good Faith Designation to Purchaser*,³ in connection with the hearing scheduled for September 26, 2022, at 2:45 p.m. (Central) to consider the NIA ATX Motion (the "Hearing"), and including any and all other matters taken up by the Court at the Hearing.

2. Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or information provided to me by professionals working under my supervision. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

3. In my over three decades of experience acting as a bankruptcy trustee, I have administered and presided over numerous sales of bankruptcy estate assets pursuant to section 363 of the Bankruptcy Code.

4. This Bankruptcy Case was filed as a single asset real estate case. *See* Voluntary Petition [Docket No. 1], at No. 7. At all times since the Petition Date, the Debtor and the Estate have held one asset: a mixed-use lot including adjacent parcels with two (2) commercial buildings with more than seventy thousand (70,000) square feet of office space as well as a residential apartment complex with one hundred fifteen total units, branded as "South Congress Square" and with primary address at 500 South Congress Avenue, Austin, Texas 78704 (the "Property"). *See* Bankruptcy Schedule A/B [Docket No. 15], at No. 55; *Debtor's Second Amended Disclosure Statement* [Docket No. 80], at § 2.1.

B. **Administration of Sale Procedures / Qualified Bids**

5. On June 13, 2022, this Court entered its Order [Docket No. 262] ("Sale Procedures Order") which, *inter alia*: (i) approved certain procedures to govern the marketing and sale of the

---

³ Docket No. 374 (the "Alternative Sale Motion"). Capitalized terms used and not otherwise defined herein have the same definitions as are set forth in the Alternative Sale Motion.

Page 2

Property, including but not limited to procedures governing the assumption and assignment of executory contracts designated by the purchaser ("Sale Procedures"); and (ii) scheduled an auction to resolve and determine the qualified bidder who has successfully made the highest and best bid for the Property ("Successful Bidder") as well as the Qualified Bidder making the next best and highest offer for the Property ("Back Up Bidder"), as well as a contemporaneous final sale hearing to consider the Court's approval of the sale to the Successful Bidder and/or Back Up Bidder.

6. The Sale Procedures expressly require that any bid made Property pursuant to the Sale Procedures: (i) "**be entirely irrevocable and unconditional** with respect to financing or any other approval, authorization, or contingency, save for Bankruptcy Court authorization"; and (ii) "**include the bidder's agreement, if approved as Successful Bidder or Back Up Bidder (as such terms are defined herein), to close its approved bid by no later than 5:00 p.m. Central time on the first date that is three (3) business days following entry of the Final Sale Order**." Sale Procedures, § 2(b) (emphasis added).

7. NIA ATX LLC ("NIA ATX") participated in the Sale Procedures and on July 18, 2022, timely made a purportedly qualified bid thereunder. On that date, counsel for NIA ATX, M. "Trey" White delivered written correspondence to me submitting NIA ATX's formal bid, under which he stated:

> This offer to purchase is entirely irrevocable and unconditional with respect to financing or any other approval, authorization, or contingency, save for Bankruptcy Court authorization. My client agrees and understands that, if it is selected as the successful bidder or back-up bidder, that it will be expected to close the purchase transaction by no later than 5:00 p.m. Central time on the first date that is three (3) business days following entry of the Final Sale Order.

*See* E-mail correspondence from M. "Trey" White, dated July 18, 2022, attached hereto as **Exhibit "A"** and incorporated herein by reference for all purposes.

8. The bid made by NIA ATX expressly provides that, "The Closing of this Agreement will take place not later than three (3) business days following entry of the Sale Order by the Bankruptcy Court authorizing the Trustee to enter into this Agreement and proceed with Closing (the Closing Date), or at such other time as ordered by the Bankruptcy Court." *See* (proposed) Contract for Sale § 5.1, attached hereto as **Exhibit "B"** and incorporated herein by reference for all purposes.

9. Following the expiration of the Bid Deadline, I determined the following five (5) bidders to be Qualified Bidders entitled to participate in the Auction (collectively, "Qualified Bidders"):

   a. KL Horns Up LLC (the "DIP Lender");

   b. NIA ATX;

   c. Onni Capital LLC;

   d. Related Texas LLC; and

   e. Rising Tide Investments, LLC ("Rising Tide").

No other interested bidder timely made a bid in at least the minimum bid amount or a required deposit in connection with such a bid.

C. **Auction and Failed Sale Closing with Successful Bidder**

10. On July 27, 2022, I conducted an auction under the oversight of the Bankruptcy Court, followed by a final hearing ("Prior Final Sale Hearing") to consider and approve the sale of the Property, free and clear of liens, claims, and other encumbrances ("Sale").

11. NIA ATX participated in the auction under the Sale Procedures. The Sale Procedures expressly provide that, with respect to any Qualified Bidder's participation in the auction, "all such overbids shall be subject to the same Qualified Bid requirements as set forth above." Sale Procedures, § 3. Accordingly, **all** bids made at the auction by NIA ATX contained

and included the same representations and commitments as set forth in Paragraph 6 of this Declaration, *supra*.

12. On July 27, 2022, prior to the conducting of the auction, NIA ATX expressly requested that I confirm the time allowed for a buyer to close the Sale, once approved, under the Sale Procedures. My counsel expressly informed NIA ATX that I had agreed to provide all buyers as much as thirty (30) days to close a court-approved bid. In response NIA ATX's counsel asked to confirm that the closing deadline would be thirty (30) **business** days to close its court-approved bid, but I expressly responded (through counsel) that the deadline would arrive in thirty (30) **calendar** days. *See* E-mail correspondence between T. White and J. Ong (July 25–27, 2022), a true and correct copy of which is attached hereto as **Exhibit "C"** and incorporated herein by reference for all purposes.

13. At the auction, Rising Tide was determined to be the Successful Bidder pursuant to its bid of $95.1 million, and NIA ATX LLC ("NIA ATX") was approved as the Back Up Bidder pursuant to its bid of $95.0 million. On August 1, 2022, the Court entered a final order memorializing the foregoing and approving the Sale to the Purchaser (as defined and provided therein to be either the Successful Bidder or Back Up Bidder, as applicable) [Docket No. 315] (the "Prior Final Sale Order"). *See* Prior Final Sale Order, pp. 5, 7–8.

14. The Prior Final Sale Order, *inter alia*, provides for anticipated periods for the closing of the sale to the Successful Bidder and Back Up Bidder, with the Sale to the Back Up Bidder to take place by the end of September 2022. Prior Final Sale Order, p. 8 (¶ 7). Following the entry of the Prior Final Sale Order, I and Rising Tide scheduled the sale closing for August 30, 2022.

15. In negotiating the form of Prior Final Sale Order, NIA ATX expressly requested that I provide it 60 days from the date of my notice to it of my request to close the Sale to accomplish same, but I, again, expressly affirmed that I would only agree to provide it thirty (30) days to close following my request to it as Back Up Bidder. *See* E-mail correspondence between T. White and J. Ong (July 27–29, 2022), a true and correct copy of which is attached hereto as **Exhibit "D"** and incorporated herein by reference for all purposes. As a result of this, NIA ATX knew at the time that the Prior Final Sale Order was entered of the deadline to close the Sale.

16. Shortly in advance of the scheduled closing, Rising Tide informed me that it declined to proceed with the closing. Accordingly, on August 30, 2022, I filed and served my *Notice of Non-Closing of Sale and of Request to Back Up Bidder to Close Back Up Bid for Real Property Located at 500 South Congress Avenue, Austin, Texas 78704, and Related Interests, Free and Clear of All Liens, Claims, and Encumbrances* [Docket No. 351] ("Notice to Back Up Bidder").

17. On Saturday, July 30, 2022, only 3 days following the auction, NIA ATX, through its counsel Mr. White, called my counsel by telephone, and expressly stated that it could not close its bid within sixty (60) days of entry of the Prior Final Sale Order and requested additional time to close its transaction. During this call, NIA ATX then requested that I provide it ninety (90) days from the date of entry of the Prior Final Sale Order, or from the date of my notice to it of my request to close its bid (which could be as much as 120 days from the date of entry of the Prior Final Sale Order), to close its bid.

18. NIA ATX expressly represented to me and the Court under its bids that it could close its court-approved bid within 3 business days and under the Prior Final Sale Order, by

Page 6

September 30, 2022, but NIA ATX disavowed this ability almost immediately following the auction.

19. On the following Monday, August 1, 2022, Mr. White transmitted a formal e-mail request to my counsel under which he referenced their prior phone conversation and formally requested my consent to provide NIA ATX as much as ninety (90) days to close the Sale (as stated therein, Mr. White "assured" me that NIA ATX would not in fact need the entire requested ninety (90) days to close. In response, my counsel responded on my behalf stating: (i) that under the circumstances as they existed at that time, I believed I had some discretion under the Prior Final Sale Order to extend the closing date of the Sale and that I would generally be amenable to considering such extensions, "To the extent that the closing process gives rise to principled and specific reasons to extend the closing date with the buyer," and also that I would "consider and address each such request as it arises and is made, on its own merit." *See* E-mail correspondence between T. White and J. Ong (August 1, 2022 – September 1, 2022), a true and correct copy of which is attached hereto as **Exhibit "E"** and incorporated herein by reference for all purposes.

20. In the foregoing Exhibit "E", NIA ATX also affirmed its obligation to increase its deposit (to $1 million), as Court-approved back up Bidder, "within three days of entry of the final sales order." However, NIA ATX also did not timely fund its required additional deposit to me as provided in the Prior Final Sale Order, despite my repeated requests for same that are also evidenced under **Exhibit "E"**. *See* Exhibit "E"; *see also* Prior Final Sale Order, p. 7 (¶ 4) ("By no later than the date that is three (3) business days from the date of entry of this Final Sale Order, the Successful Bidder and Back up Bidder shall each increase its earnest money deposit with the Trustee to a total of $1 million . . . .").

21. This failure and refusal accordingly constituted a default under the express terms of the Sale Procedures. Notwithstanding, upon receiving the Notice to Back Up Bidder and my demand for the increased deposit requirement, NIA ATX funded the entirety of same.

22. NIA ATX also made an irrevocable noncontingent bid with a commitment to close within 30 days pursuant to which it was approved as a back-up bidder in the affiliated case of *In re: WC 3rd and Trinity, LP*, Case No. 21-10252), but NIA ATX has since attempted to disavow its court-approved bid and intention to close.

**D.     The DIP Lender Motion and September 12, 2022 Hearing**

23. As a result of the increasing concerns over NIA ATX's ability and willingness to close its court-approved Back Up Bid as required under the Prior Final Sale Order, I began to explore a further contingent sale proposal to reinforce the Estate and protect its equity in the Property, only in the event that NIA ATX defaulted on its obligations and opportunities to close the Sale.

24. On September 2, 2022, following Rising Tide's default, I, through my counsel and Sale Agent, began inquiring with the remaining Qualified Bidders under the Sale Procedures—the DIP Lender, Related Cos., and Onni Capital LLC—as to whether they would be willing to participate in this effort to procure a potential further back up proposal to submit to the Court in the event that NIA ATX fails to timely close its Sale. I requested the remaining Qualified Bidders provide their highest and best offer to serve in such role.

25. Related Cos. made the highest offer for the Property, in the amount of $65 million.

26. On September 6, 2022, the DIP Lender (and its principal) filed their expedited motion seeking relief from the automatic stay to the extent necessary to allow the DIP Lender to post the Property for foreclosure [Docket No. 355] ("MLS Motion").

Page 8

27. At the hearing conducted on September 12, 2022 to consider the DIP Lender's MLS Motion, NIA ATX asserted that following entry of the Prior Final Sale Order, I had provided to NIA ATX an extension of the deadline to close the Sale beyond September 30, 2022, however, I did **not** at any time intend to agree to extend the closing deadline past October 31, 2022. At the Hearing, the Court ruled that the deadline to close the Sale with any party other than the DIP Lender does not extend past September 30, 2022 in any event.

28. I understand the Court's rulings on September 12, 2022 to be based substantially on the consideration that, as a post-petition Court-approved lender, the DIP Lender had and has the ability to enforce its loan rights in default without concern for the automatic stay arising under section 362 of the Bankruptcy Code, as asserted by the DIP Lender under its MLS Motion. *See* MLS Motion, ¶ 3.

29. Therefore, even assuming that I originally had the discretion to extend the Sale closing date under the Prior Final Sale Order beyond the time frames set forth therein, I understand this Court to have since found and concluded at the September 12, 2022 hearing that the DIP Lender's MLS Motion constituted a subsequent intervening event that subsequently limited the time available to the Estate to close the Sale to no longer than September 30, 2022.

30. Accordingly, I also understand that at the September 12, 2022 Hearing, the Court further ruled that NIA ATX must affirmatively affirm to me by the close of business on September 13, 2022, whether NIA ATX can and will close its Court-approved, irrevocable offer of $95.0 million by no later than September 30, 2022, and suggested that due to the possibility that NIA ATX fails to provide that affirmation, I revert with Related Cos. to resolve whether Related Cos. can and will close its potential $65 million purchase of the Property by September 30, 2022 as a back stop to the court-approved NIA ATX bid. In addition, the Court ruled that failing the

affirmation of such a foregoing, proposed sale transaction that can and will close by September 30 2022, the Court directed that I should sell the Property to the DIP Lender who affirmed its agreement to purchase same for an amount equal to all Estate pre-petition and administrative obligations.

E.   **Implementation of Court's Ruling and Corresponding Sale Efforts**

31.   Following the September 12, 2022 Hearing, I had my counsel coordinate with counsel for the DIP Lender, counsel for Related Cos., and with NIA ATX and its counsel regarding the Court's rulings.

32.   Through the afternoon of September 13, 2022, my counsel remained in discussions with NIA ATX and made multiple requests for NIA ATX to affirmatively state to me by the close of business on September 13, 2022, whether NIA ATX can and will close its Court-approved, irrevocable offer of $95.0 million by no later than September 30, 2022. NIA ATX provided no such response, affirmation, or acknowledgement (one way or the other). Instead, NIA ATX devoted its efforts to seeking to renegotiate its Court-approved bid, asserting that it should be allowed to close a sale transaction at an amount substantially less than its Court-approved bid but higher than Related Cos. proposed offer. I understand that NIA ATX committed to close such a transaction by September 30, 2022, and to provide a substantial, additional, nonrefundable earnest money deposit in support of same. However, I declined this proposal because, *inter alia*: (i) NIA ATX has already admitted or failed to dispute that it cannot perform two recent bids it made in open Court (including in this case and the affiliated case of *In re: WC 3rd and Trinity, LP*, Case No. 21-10252) under express sale procedures and a Prior Final Sale Order (requiring irrevocable bidding with no contingencies and the ability to close a transaction within 30 days), which materially impacts my assessment of its likely performance; (ii) NIA ATX's most recently proposed transaction would be mutually exclusive of any potential transaction with Related Cos.

and I believe the Related Cos. proposal is more likely to timely close based on the foregoing; and (iii) following NIA ATX's failure to affirm its ability to close its Court-approved bid for the Property, allowing NIA ATX to participate in additional, competitive bidding may fairly and arguably implicate providing the same accommodation to Rising Tide, which I do not believe is reasonable under the particular circumstances, including but not limited to timing considerations and constraints.

33. Related Cos. timely affirmed its willingness and ability to close its proposed sale transaction by September 30, 2022.

34. Accordingly, in implementation of the Court's rulings at the September 12, 2022 hearing I determined under my business judgment that NIA ATX has defaulted on its ability to preserve its Court-approved Sale transaction by failing to timely affirm same, the Related Cos. proposed sale transaction remains viable, and in the event that Related Cos. declined to close the Sale by September 30, 2022, I would instead proceed to close the Sale with the DIP Lender for a Sale amount that will pay all allowed claims and cost of administration, in full.

35. Accordingly, on September 13, 2022, I filed my *(Emergency)* Alternative Sale Motion in order to procure an order authorizing such Sale to the Related Cos., or the DIP Lender, as applicable.

**F.  September 15, 2022 Hearing to Consider MLS Motion (Status Conference) and Alternative Sale Motion**

36. On September 15, 2022, this Court held a hearing to consider a status conference on the DIP Lender's MLS Motion, as well as on the Alternative Sale Motion.

37. In connection with the hearing, I reported NIA ATX's foregoing failure to affirm its willingness to close its court-approved Sale in the time allowed by the Court. In connection with the hearing NIA ATX proffered and obtained the admission of the Declaration of D. Dennett

under its Exhibit "11" ("Dennett Declaration"). The Dennett Declaration does not represent or affirm NIA ATX's willingness to close its court-approved Sale by September 30, 3022, as allowed by the Court, but states that it "relied" on an ability to close the Sale by December 14, 2022, and alternatively, would close a Sale for a lesser amount, $70 million, by September 30, 2022. As a result of the foregoing, this Court found that NIA ATX was employing a "bait and switch" strategy in its dealings with the Estate

38. In contrast, Related affirmed at the September 15, 2022 hearing that it would close its Sale by September 30, 2022 if duly approved by the Court, and the DIP Lender affirmed its willingness to close a Sale transaction for an amount equal to all Estate obligations (subject to allowance).

39. Following the Court's consideration of the evidence submitted and the record before it, on September 15, 2022, this Court entered its Alternative Sale Order granting the Alternative Sale Motion. At that time, the Court, by the DIP Lender's consent and agreement to serve as the final purchaser of "last resort" for the Estate's Property, denied the MLS Motion. *See* Docket No. 393.

**G.     The NIA ATX Motion**

40. NIA ATX filed the NIA ATX Motion on September 23, 2022, requesting that the Court stay the Alternative Sale Order on the basis that NIA ATX would allegedly have a "substantial case" on appeal and that the lack of a stay would irreparably harm NIA ATX while not harming any other parties. NIA ATX Motion, ¶¶ 44–45, 54–56.

41. Therein, NIA ATX first attempts to address its lack of standing to appeal, asserting that while a disgruntled, potential purchaser generally lacks standing to object to a proposed estate sale to an alternative buyer, a disgruntled, would-be purchaser of an estate's assets can have standing where the basis of the objection is the unfair exclusion of the bidder from the sale process.

NIA ATX Motion, ¶ 48; *see also In re Quanalyze Oil & Gas Corp.*, 250 B.R. 83, 89 n. 6 (Bankr. W.D. Tex. 2000) ("A competing bidder normally lacks standing to even challenge a sale, much less seek reconsideration of an order approving sale….there are narrow exceptions, primarily designed to afford a fair opportunity for the courts to police the integrity of the sale process." (citing *In re HST Gathering Co.*, 125 B.R. 466, 468 (W.D. Tex. 1991)).

42. Here however, NIA ATX fails to dispute that it had every opportunity to participate in the Sale Procedures and in fact was determined to be the Back Up Bidder following that process. It was not unfairly excluded from any process.

43. Even as to the Court's Alternative Sale Order, the NIA ATX Motion wholly ignores that fact that the Court had first ruled that NIA ATX would have the opportunity to close the Sale, merely by reaffirming its original commitment under its bid to timely close that transaction. It had the opportunity to preserve its alleged interests and close its transaction by simply affirming its willingness to do so by September 30, 2022, but failed and refused to do that. The NIA ATX Motion makes no effort to allege that NIA ATX fulfilled this requirement. It was only after NIA ATX defaulted in this opportunity that it was justifiably excluded in any further sale discussions as a potential buyer.

44. Critically, in asserting that NIA ATX has some legally cognizable right that confers it standing and that it has a substantial chance of sustaining on appeal, NIA ATX wholly relies on its argument that it allegedly held a substantive right under its signed (but not notarized, dated nor closed, and also repudiated[4]) asset purchase agreement with the Trustee that the Alternative Sale

---

[4] NIA ATX's Exhibit "6" for the September 15, 2022 hearing establishes that I expressly revoked my execution of that agreement on September 9, 2022.

Order adversely impacted. NIA ATX Motion, ¶¶ 1, 3, 6, 7. Accordingly, it asserts that the Court exceeded its authority in entering the Alternative Sale Order. *Id*. ¶ 45.

45. The form of putative asset purchase agreement evidenced by NIA ATX was its Exhibit "2" admitted at the September 15, 2022 Hearing. Section 6.1 of that agreement, titled "Termination Prior to Closing" expressly provides that: "In the event of any termination of this Agreement, this Agreement shall forthwith become wholly void and of no further force and effect, and there shall be no liability on the part of Buyer or Seller or the Trustee."

46. Here, it must also be observed that NIA ATX has no legitimate interests in the Sale process because it obtained any such interests as a putative buyer through fraud on the Trustee, Estate, and the Court. It is plainly obvious at this point in the case that NIA ATX submitted its bids knowing it could not close in thirty (30) days as it represented. Accordingly, NIA ATX's argument that it has some substantive, pecuniary right to close this un-notarized, undated agreement that was repudiated prior to closing, fails.

47. NIA ATX also wholly ignores the intervening event of the DIP Lender's MLS Motion, which the Court has already ruled subsequently negated and curtailed any ability that the Estate had to provide a closing date longer than September 30, 2022. NIA ATX appears to also argue that there was no timing exigency facing the Estate and Court by virtue of the DIP Lender's MLS Motion, because the DIP Lender is allegedly adequately protected. This argument wholly ignores the fact that the DIP Lender is a post-petition lender who has already received modification of the automatic stay in order to enforce its rights.

48. For the same reasons, NIA ATX's final argument that the Estate and other parties would not be prejudiced by its appeal is simply specious. It is obvious that the Estate is at risk of NIA ATX's nonperformance as it has already defaulted on prior sale closings in this and a related

case. NIA ATX does not dispute that if its motion is granted, the Related Cos. Sale (and potentially the DIP Lender's Sale under the Alternative Sale Order) would be lost. Indeed, if the Estate were forced to proceed with the DIP Lender's Sale (providing no proceeds to equity) instead of the Related Cos. Sale, the impact is currently projected to cost millions of dollars in equity to the Debtor's interest holders.

49. As a result of the foregoing, NIA ATX should absolutely be required to post a bond in connection with any relief granted to NIA ATX on its motion, because its relief poses a serious threat to the interests of the Estate. Indeed, the simple fact that NIA ATX asks to be free of even the obligation to post a bond in favor of its motion and appeal strongly indicates that NIA ATX has no intention of timely closing a $95.0 million purchase of the Estate's assets.

50. Finally, NIA ATX's naked, unsupported assertion that either the DIP Lender or Related Cos. is not a good faith bidder should also be flatly rejected. NIA ATX provides no evidence in support of this assertion and the Trustee is aware of none.

51. I believe that the Related Cos. and DIP Lender have participated in the Sale Procedures and the proceedings that led to the Alternative Sale Order in good faith and have no basis to dispute such good faith.

Pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the foregoing is true to the best of my actual, personal knowledge, information, and belief.

Dated: September 26, 2022

                                                 */s/ Randolph N. Osherow*
                                                 Randolph N. Osherow, Trustee

**Certificate of Service**

The undersigned hereby certifies that, on the 26th day of September 2022, he personally caused true and correct copies of the foregoing Declaration to be served by electronically filing it with the Court using the Court's CM/ECF system, which sent notification to the following parties:

Rachel Layne Biblo Block on behalf of Interested Party Kennedy Lewis Investment Management LLC
rbibloblock@akingump.com; bkemp@akingump.com

Lynn Hamilton Butler on behalf of Interested Party KL Horns Up LLC
lynn.butler@huschblackwell.com; penny.keller@huschblackwell.com; christine.deacon@huschblackwell.com; elizabeth-spivey-5378@ecf.pacerpro.com; lynn-hamilton-butler-2113@ecf.pacerpro.com

Lynn Hamilton Butler on behalf of Interested Party Kennedy Lewis Investment Management LLC
lynn.butler@huschblackwell.com; penny.keller@huschblackwell.com; christine.deacon@huschblackwell.com; elizabeth-spivey-5378@ecf.pacerpro.com; lynn-hamilton-butler-2113@ecf.pacerpro.com

Richard G. Grant on behalf of Interested Party Seth Kretzer
rgrant@cm.law; 9647801420@filings.docketbird.com

T. Josh Judd on behalf of Interested Party Related Texas LLC
jjudd@andrewsmyers.com; sray@andrewsmyers.com

Kell C. Mercer on behalf of Creditor 510 South Congress Lender LLC
kell.mercer@mercer-law-pc.com

Jay Ong on behalf of Trustee Randolph N Osherow
jong@munsch.com; amays@munsch.com; jay-ong-4326@ecf.pacerpro.com

Randolph N Osherow
rosherow@hotmail.com; rosherow@ecf.axosfs.com

Mark H. Ralston on behalf of Debtor WC South Congress Square LLC
mralston@fjrpllc.com; sjames@fjrpllc.com; ralstonlaw@gmail.com; LAWeisbruch@fjrpllc.com

Edward L Ripley on behalf of Interested Party Related Texas LLC
eripley@andrewsmyers.com; sray@andrewsmyers.com

Stephen A. Roberts on behalf of Interested Parties World Class Holdings VI, LLC, World Class Holdings, LLC, Natin Paul
sroberts@srobertslawfirm.com; 1222805420@filings.docketbird.com

John C. Roy on behalf of U.S. Trustee United States Trustee - AU12
casey.roy@usdoj.gov; gary.wright3@usdoj.gov

Jason A. Starks on behalf of Creditor Travis County
bkecf@traviscountytx.gov

United States Trustee - AU12
ustpregion07.au.ecf@usdoj.gov

James W Volberding on behalf of Interested Party Seth Kretzer
jamesvolberding@gmail.com; akennonassistant@gmail.com

Kimberly A. Walsh on behalf of Creditor Texas Comptroller of Public Accounts, Revenue Accounting Division
bk-kwalsh@oag.texas.gov; sherri.simpson@oag.texas.gov

Lynnette R. Warman on behalf of Interested Party Seth Kretzer
lwarman@cm.law; lynnette.warman@att.net

Jennifer Francine Wertz on behalf of Creditor 510 South Congress Lender LLC
jwertz@jw.com; kgradney@jw.com; dtrevino@jw.com;jpupo@jw.com

Morris E. "Trey" White, III on behalf of Interested Party NIA ATX LLC
treywhite@villawhite.com; ecfnotices@villawhite.com; bankruptcysa@gmail.com

Seth E. Meisel on behalf of Interested Party NIA ATX LLC
smeisel@dbcllp.com

                                                              /s/ Thanhan Nguyen
                                                               Thanhan Nguyen